JUDGE PBTBBS
delivered the oeihion of the court.
These two appeals are prosecuted on the same record, involve the same questions, and will be disposed of in one opinion.
In 1865 W. H. Landram was collector of the state revenue for Gallatin County, and also of the fund levied on the citizens of said county to pay volunteers enlisted in the Federal army during the late war.
James Landram and others were the sureties of "W. H. Landram on his official bond for the collection of the revenue; and said James Landram, George Glenn, and others were the sureties of said W. H. Landram on his official bond for the collection of the tax imposed to pay volunteers, styled the bounty fund, in the pleadings; and appellant Clore and others were a committee appointed to receive the bounty fund when collected from W. H. Landram, and make the proper application thereof.
In the latter part of the year 1865, or early in January, 1866, Wm. S. Allen and W. A. Bailey purchased a lot of mules and horses for the southern market, and by an arrangement said W. II. Landram and one Bond were made interested in the stock, and Allen and Bond took the drove to market. "While Allen was in Yicksburg *79 with the stock, or perhaps after he had sold out, he wrote home to Bailey to buy and send on to him a second drove. Bailey, as soon as practicable, it seems, purchased the stock as required by Allen, and early in February, 1866, started them to him in Vicksburg under the care and management of said W. H. Landram.
Allen left Vicksburg for home before the stock arrived, passed it on the river, and was aware that it had been sent when he reached Louisville, or before, but proceeded to Gallatin County, went to Bailey, settled with him for the mules, etc., he and Bond took to Vicksburg, and handed him in addition drafts on houses in New York to the amount of $2,400; and that money is the subject of this controversy.
Allen very soon after the settlement and payment of said money to Bailey left for Vicksburg after the stock Landram had started to take to him; but before he reached that place Landram had sold out, and purchased another drove, which he started with to New Orleans. That adventure proved most disastrous from causes not necessary here to mention. Landram was a defaulter in paying over the revenue and the bounty fund collected by him.
Early in March Payné, a creditor and also the surety of Landram, commenced proceedings by attachment against his estate to secure himself. Pending that action, J. J. Landram and others, as sureties of ~W. H. Landram, and Clore and others, trustees of the bounty fund, intervened. ’ Bailey and Allen were made defendants. The $2,400 paid by Allen to Bailey was charged by said sureties and said trustees to be the money of ‘W. PI. Landram, or the revenue and bounty fund collected by him and paid over to Bailey by Allen without authority; was fiercely sought by these sureties and others; and became the chief matter of contention between them.
*80 On final hearing the original and amended petitions of Clore and others against Bailey, and those of J. J. Landram and others against him, were dismissed at their costs by the circuit court, and of that judgment they now complain.
Allen was examined as a witness by appellants, and he proves that W. H. Landram gave him the sum of fiye hundred dollars in money. He put in some stock and provender, but the value thereof he does not fix with any certainty; nor does he state certainly that the five hundred dollars were put in by Landram as an advancement to the firm. He says Landram paid to him, the 9th of January, 1866, five hundred dollars in money, and that it seemed to him it must have been after Landram and Bond came into the venture, but he can not be positive about it.
It has often been said that money has no ear-marks and can not be readily traced or identified. The stock and provender advanced by W. II. Landram certainly were not subject to any lien of appellants, and the money has not been identified as the same collected by him as revenue or bounty fund; and it would certainly be a dangerous precedent to settle that those receiving money from officials, such as collectors of the state revenue and military or bounty funds, would be responsible to the sureties of such officials whenever they failed to account as required by law.
But the evidence and attending circumstances conduce strongly to the conclusion that the money paid by Allen to Bailey on his return from his first trip South was paid on his part of the second drove which he had written to Bailey to buy. That he gave the order he does not controvert. The pretense that they were to be sent to him by the special agent, the negro Harvie, is not proved, and is rebutted by other evidence. He followed the stock in *81 a few days, and if he had no interest in them he has shown no reason for his immediate return to Vicksburg. Bailey had paid for the second lot. Allen said, before he left Kentucky and after he arrived in Vicksburg, he was interested in that stock; and Miss Bond proves she was present when the payment was .made, and it was made for Allen’s part of this second lot of stock.
But even if the money was Landram’s, it is difficult to perceive on what principle Bailey can be made to surrender it. Landram failed to account to him for the mules intrusted to his care; he sold them and got the money, and owed Bailey for his part of them. Bailey’s equity to retain what he had in his hands was at least equal to that of appellants, and the chancellor would not take it from him and pay it to others who had no better or more meritorious claim to it than he had. In any view of the case therefore we can perceive no error.
Wherefore the judgment on both appeals is affirmed.